**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

```
------------------------------x
In re:                        :
                              :
VINCENT ANDREWS MANAGEMENT    : Civ. No. 3:08MC132(AWT)
CORP., ROBERT ANDREWS, and    :
VINCENT ANDREWS               :
                              :
          Debtors.            :
------------------------------x
VINCENT ANDREWS,              :
                              :
          Appellant,          :
          v.                  : Civ. No. 3:08CV778(AWT)
                              :
CHRISTOPHER MCCARRON,         :
                              :
          Appellee.           :
------------------------------x
ROBERT ANDREWS,               :
                              :
          Appellant,          :
          v.                  : Civ. No. 3:08CV779(AWT)
                              :
CHRISTOPHER MCCARRON,         :
                              :
          Appellee.           :
------------------------------x
VINCENT ANDREWS,              :
                              :
          Appellant,          :
          v.                  : Civ. No. 3:08CV780(AWT)
                              :
LAFFIT PINCAY, JR.,           :
                              :
          Appellee.           :
------------------------------x
ROBERT ANDREWS,               :
                              :
          Appellant,          :
          v.                  : Civ. No. 3:08CV781(AWT)
                              :
LAFFIT PINCAY, JR.,           :
                              :
          Appellee.           :
------------------------------x
```

## RULING ON BANKRUPTCY APPEAL

Vincent Andrews and Robert Andrews (collectively, the "Debtors"
or the "Appellants") appeal an order of the United States Bankruptcy

Court for the District of Connecticut (the "Bankruptcy Court") granting a motion for summary judgment, filed by Christopher McCarron ("McCarron") and Laffit Pincay, Jr. ("Pincay") (collectively, the "Appellees"), based on collateral estoppel.  For the reasons set forth below, the Bankruptcy Court's decision is being affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1989, the Appellees filed actions against the Appellants in the United States District Court for the Central District of California (the "California District Court"), bringing civil claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and state law claims for fraud.  On July 30, 1992, a jury returned verdicts in favor of the Appellees on both their RICO and state law claims.[1]  The Appellees were directed to elect damages, and elected damages based on their RICO claims.  On October 28, 1993, judgment entered accordingly.

On February 28, 1994, the Appellants filed voluntary Chapter 11 bankruptcy petitions in the Bankruptcy Court.  On June 20, 1994, the Appellees commenced adversary proceedings seeking a determination that the judgment debts were non-dischargeable under 11 U.S.C. § 523(a)(2)(A), which provides that a debtor is not entitled to a discharge from any debt for money to the extent that it was obtained by false pretenses, a false representation or actual fraud. Specifically, the Appellees asserted a claim in the First Amended Complaint for fraud under § 523(a)(2)(A), described as fraudulent

---

[1] The jury awarded Pincay and McCarron $670,685 and $313,841 in compensatory damages, respectively, and $2.1 million and $1.18 million in punitive damages, respectively.

misrepresentation and concealment, alleging that the Appellants "made false and fraudulent representations to the [Appellees], and the [Appellants] falsely and fraudulently concealed information from the [Appellees]." In re Andrews, 385 B.R. 496, 507 (Bankr. D. Conn. 2008). On October 26, 1995, the Bankruptcy Court entered an order staying the proceedings until final and non-appealable judgments were entered in the California action.

After further proceedings in the California District Court, that court entered a final judgment on the Appellees' RICO claims on January 9, 1998. The Appellants appealed to the United States Court of Appeals for the Ninth Circuit. On February 6, 2001, the Ninth Circuit reversed the judgment because the RICO claims were barred by the statute of limitations, but did not disturb the jury verdicts on the Appellees' state law claims.[2] See Pincay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001) ("Pincay I"), cert. denied, 534 U.S. 885 (2001). On July 3, 2002, the California District Court entered judgment in favor of the Appellees on their state law claims. The Appellants again appealed to the Ninth Circuit.[3] On March 16, 2005, the Ninth Circuit affirmed the judgment on the state law claims. See

_____

[2] Specifically, the Ninth Circuit held that no reasonable jury could have concluded that the Appellees did not have constructive notice of their injuries based on written disclosures they received as early as 1980, and thus their claims, which were filed in 1989, were barred by the four-year statute of limitations for civil RICO actions.

[3] Although the appeal was untimely, the California District Court allowed the Appellants to proceed on the ground of excusable neglect. That decision was reversed by a panel of the Ninth Circuit. See Pincay v. Andrews, 351 F.3d 947 (9th Cir. 2003). However, after a rehearing en banc, the Ninth Circuit upheld the decision of the California District Court. See Pincay v. Andrews, 389 F.3d 853 (9th Cir. 2004).

<u>Pincay v. Andrews</u>, 2005 WL 3782443 (9th Cir. 2005), <u>cert.</u> <u>denied</u>, 546 U.S. 1061 (2005) ("<u>Pincay II</u>").  On appeal, the Appellants argued that California's statute of limitations barred the Appellees' claims. However, the Ninth Circuit concluded that the Appellants' argument was in substance an untimely attack on the jury's findings and the jury instructions.  <u>See</u> <u>id.</u>, 2005 WL 3782443, at *2.

On January 13, 2006, the Bankruptcy Court lifted the stay.  On March 21, 2007, the Appellees filed a motion for summary judgment and the Appellants filed a cross-motion for summary judgment, all pursuant to a stipulation entered into by the parties and approved by the Bankruptcy Court.  On April 8, 2008, the Bankruptcy Court granted the Appellees' motion for summary judgment, holding that the subject debts were non-dischargeable based on the collateral estoppel effect of the judgment previously entered in the California District Court.  <u>See</u> <u>In re Andrews</u>, 385 B.R. at 506-510.  Specifically, the Bankruptcy Court concluded that the issue of whether the Appellants committed fraud was already litigated and decided in the California action and was entitled to preclusive effect in the bankruptcy proceedings.[4]  The Bankruptcy Court informed the parties that its order constituted a final, appealable judgment.

---

[4] The Bankruptcy Court also denied the Appellant's cross-motion for summary judgment, holding that genuine issues of material fact existed as to whether the doctrines of judicial estoppel and waiver barred the Appellants from asserting a defense based on the untimeliness of the Appellees' complaint.  <u>In re Andrews</u>, 385 B.R. at 501-10.  As stipulated and agreed to by the parties, this is not an issue raised on appeal.  (<u>See</u> Stipulation and Order, Doc. No. 22.)

## II.   STANDARD OF REVIEW

"Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." In re Charter Commc'n, Inc., 691 F.3d 476, 482-83 (2d Cir. 2012).  Findings of fact are not to be set aside unless they are "clearly erroneous."  See Fed. R. Bankr. P. 8013.  "A finding is only 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

"A grant of summary judgment is reviewed de novo by the appellate court." Penthouse Media Group, Inc. v. Pachulski Stang Ziehl & Jones LLP, 406 B.R. 453, 457 (S.D.N.Y. 2009) (citing In re Blackwood Assocs., L.P., 153 F.3d 61, 67 (2d Cir. 1998)). "The application of collateral estoppel to a given case is a question of law that [the court] review[s] de novo." M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 284 (2d Cir. 2012).

## III. DISCUSSION

The issue on appeal for this court is whether the Bankruptcy Court erred in giving collateral estoppel effect to the Appellees' judgment in the California District Court with respect to the Appellees' claim that the California judgment is a non-dischargeable debt under § 523(a)(2)(A).

"It is well established that federal law on collateral estoppel

-5-

applies to determine the preclusive effect of a prior federal judgment." Purdy v. Zeldes, 337 F.3d 253, 258 n.5 (2d Cir. 2003). "Under federal law, collateral estoppel applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Id., 337 F.3d at 258 (quoting Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted); cf. Brown v. Felsen, 442 U.S. 127, 139 n.9 (1979) ("If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § [523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.").

The Appellants contend that the requirements for applying collateral estoppel are not satisfied here because justifiable reliance is an element that must be established under § 523(a)(2)(A), but the California District Court, applying California law, did not use the federal standard for justifiable reliance.  Thus, the Appellants argue, justifiable reliance within the meaning of § 523(a)(2)(A) was not actually litigated and decided in the California action.

**A.   § 523(a)(2)(A), California Law, and Justifiable Reliance**

Section 523(a) enumerates a series of categories of non-dischargeable debt.  Section 523(a)(2) provides that:

-6-

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) <u>false pretenses, a false representation, or actual fraud</u>, other than a statement respecting the debtor's or an insider's financial condition; [or] (B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive[.]

(emphasis added).

In <u>Field v. Mans</u>, 516 U.S. 59 (1995), the Supreme Court resolved "a conflict among the Circuits over the level of reliance that § 523(a)(2)(A) requires a creditor to demonstrate." 516 U.S. at 63. Section 523(a)(2)(A) "applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud . . . ." <u>Id.</u> at 66. The Court rejected the government's position that the express language concerning reliance in clause (2)(B), contrasted with the silence with respect to reliance in clause (2)(A), manifested Congressional intent to limit the requirement of reliance to clause (2)(B). <u>See id.</u> at 66-68. In analyzing "the substantive terms" of § 523(a)(2)(A), the Court found that they refer to common-law torts.[5] <u>Id.</u> at 69. The Court stated that the "operative terms" in § 523(a)(2)(A) "carry the acquired meaning of terms of art." <u>Id.</u> As common-law terms, "they imply elements that the common law has defined

---

[5] Although the analysis in <u>Field v. Mans</u> was based on conduct that amounted to fraud, the Court noted that "we do not mean to suggest that the requisite level of reliance would differ if there should be a case of false pretense or representation but not of fraud . . . ." 516 U.S. at 70 n.8.

them to include." <u>Id.</u>  The Court stated further that it "construe[d]
the terms in § 523(a)(2)(A) to incorporate the general common law of
torts, the dominant consensus of common-law jurisdictions, rather than
the law of any particular State."  <u>Id.</u> at 70 n.9.

The Court began its analysis with the Restatement (Second) of
Torts (1976), and focused on the section dealing with fraudulent
misrepresentation.  <u>See id.</u> at 70.  The Restatement (Second) of Torts
(1976) has a section entitled, "Title C. Justifiable Reliance," that
starts with § 537 (General Rule) and ends with § 545A (Contributory
Negligence).  The Court referenced Restatement (Second) of Torts
§§ 537, 540, 541 and 545A in the course of its analysis.  It also
referenced <u>Prosser and Keeton on the Law of Torts</u>.  After an analysis
of these authorities, the Court concluded that § 523(a)(2)(A)
"requires justifiable, but not reasonable reliance."  <u>Id.</u> at 74-75.
The Court referenced three levels of reliance: mere reliance,
justifiable reliance and reasonable reliance.  <u>See id.</u> at 73-74
(citing majority of common-law courts as applying "an intermediate
level of reliance, most frequently referred to as justifiable
reliance").

Prior to the Supreme Court's decision in <u>Field v. Mans</u>, the Ninth
Circuit had been using a standard of reliance identical to the
standard of reliance for § 523(a)(2)(A) when applying California law.
In <u>In re Kirsh</u>, 973 F.2d 1454 (9th Cir. 1992), which the Supreme Court
cited to when concluding that § 523(a)(2)(A) requires justifiable
reliance (see <u>Field</u>, 516 U.S. at 75), the Ninth Circuit set out the
elements that a creditor must prove to preclude a debtor's discharge

pursuant to § 523(a)(2)(A).  The elements are: "(1) [that] the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; [and] (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."  In re Kirsh, 973 F.2d at 1457.  The focus of the Ninth Circuit was on the fourth element, whether the creditor relied on the false representations.

At the start of its discussion, quoting Grogan v. Garner, 498 U.S. 279 (1991), the Ninth Circuit noted:

> We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud. . . .  This suggests to us that the Court had the usual common law standard in mind, rather than some exotic standard designed to give more protection to the perpetrators of fraud.  Nor is there any reason to believe that Congress itself intended to alter the common law when it adopted section 523(a)(2)(A).

Kirsh, 973 F.2d at 1457-58 (citation omitted).  The Ninth Circuit then stated:

> If common law is to apply, it is important to identify the content of that law.  We turn to two of the best sources of that law, the well-known Prosser and Keeton on the Law of Torts and the Restatement (Second) of Torts.  They make it quite clear that at common law the justifiable reliance standard is the proper one.

Id. at 1458.  With respect to the Restatement (Second) of Torts, the Ninth Circuit, like the Supreme Court in Field v. Mans, referenced the justifiable reliance sections of the Restatement, specifically §§ 537, 540, 541 and 545A.  The Ninth Circuit then stated:

> While, as we have said, we are applying federal, not state
> law, it is worth noting that California, where the Kirshes'
> acts took place, follows the rules we have just explicated.
> Its law was defined over fifty years ago when Justice Traynor
> wrote <u>Seeger v. Odell</u>, 18 Cal.2d 409, 115 P.2d 977 (1941).

<u>Kirsh</u>, 973 F.2d at 1459.

Quoting <u>Seeger</u>, the Ninth Circuit summarized California law as

follows:

> A plaintiff must show that "he was justified in his reliance,"
> but negligence in failing to discover an intentional
> misrepresentation is no defense.  Moreover, "[t]he fact that
> an investigation would have revealed the falsity of the
> misrepresentation will not alone bar his recovery, and it is
> well established that he is not held to constructive notice of
> a public record which would reveal the true facts."  "Nor is
> the plaintiff held to the standard of precaution or of minimum
> knowledge of a hypothetical reasonable man."  It is only if
> "the conduct of the plaintiff in the light of his own
> intelligence and information was manifestly unreasonable" that
> he will be denied recovery — a person cannot purport to rely
> on preposterous representations or close his eyes "to avoid
> discovery of the truth. . . ."

<u>Kirsh</u>, 973 F.2d at 1459 (citations to <u>Seeger</u> omitted).  The court then

reviewed the decisions of various United States Courts of Appeal

concerning what the standard for reliance should be under

§ 523(a)(2)(A).  <u>Id.</u> at 1459 ("Having outlined the common law, it

remains to us to consider the cases which have spoken to the reliance

issue in the bankruptcy context.").  The Ninth Circuit stated:

> [W]e conclude that a creditor must prove justifiable reliance
> upon the representations of the debtor.  In determining that
> issue, the court must look to all of the circumstances
> surrounding the particular transaction, and must particularly
> consider the subjective effect of those circumstances upon the
> creditor.

<u>Kirsh</u>, 973 F.2d at 1460.

Thus, both the Supreme Court in <u>Field v. Mans</u> and the Ninth

Circuit in <u>In re Kirsh</u>, relied on the Restatement (Second) Torts and

-10-

<u>Prosser and Keeton on the Law of Torts</u> in articulating the standard for justifiable reliance as it would apply in the context of § 523(a)(2)(A).

Section 537 on justifiable reliance in the Restatement (Second) of Torts, provides, as a general rule, that "[t]he recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if, (a) he relie[d] on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable." Section 538 provides, as to materiality of misrepresentation, in pertinent part, that "[r]eliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material." Section 540 provides, as to a duty to investigate, that "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." Section 541 provides, as to a representation known to be or obviously false, that "[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." The section on justifiable reliance ends with § 545A, which provides, as to contributory negligence, that "[o]ne who justifiably relies upon a fraudulent misrepresentation is not barred from recovery by his contributory negligence in doing so."

With respect to <u>Prosser and Keeton on the Law of Torts</u>, the Supreme Court stated in <u>Field v. Mans</u>:

> [J]ustifiable reliance is the standard applicable to a
> victim's conduct in cases of alleged misrepresentation and

that "[i]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own."

Id., 516 U.S. at 71 (quoting W. Prosser, Law of Torts § 108, at 718 (4th ed. 1971)). In In re Kirsh, the Ninth Circuit explained that:

> [T]he standard [for justifiable reliance] is not that of the average person.  It is a more subjective standard which takes into account the knowledge and relationship of the parties themselves.   Thus, "a person of normal intelligence, experience and education . . . may not put faith in representations which any such normal person would recognize at once as preposterous. . . ."   At the same time, the standard does protect the ignorant, the gullible, and the dimwitted, for "'no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.'" On the other hand, if a person does have "special knowledge, experience and competence" he may not be permitted to rely on representations that an ordinary person would properly accept.

Kirsh, 973 F.2d at 1458 (internal citations omitted) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 108, at 749-50 (5th ed. 1984)).

## B.   Collateral Estoppel Effect

As noted above, collateral estoppel applies only if, inter alia, the issue sought to be precluded is identical to the issue decided in the earlier proceeding and was actually litigated and necessarily decided.  To determine whether the issue of fraud, as litigated and decided in the California District Court, is identical to the issue of fraud under § 523(a)(2)(A), the court reviews the jury instructions and verdict forms[6] for the jury trial in the California District Court.

The jury instructions discuss the various claims that the

---

[6] There was a verdict form for each plaintiff.

-12-

Appellees had to prove by a preponderance of the evidence, including "[t]hat defendants defrauded plaintiffs through intentional misrepresentations, concealments and[/]or negligent misrepresentations." (Record at A728.) The California District Court began with a discussion of the plaintiffs' burden to prove each of their claims and the defendants' burden to prove that the plaintiffs' claims were barred by statute of limitations. The jury instructions then discussed the law on conspiracy. The jury instructions then turned to the separate claims and the elements of each claim brought by the plaintiffs, i.e., breach of contract, breach of fiduciary duty, fraud by intentional misrepresentation, fraud by intentional concealment, RICO, and negligent misrepresentation; the jury instructions discussed the elements of each claim separately. The jury instructions then returned to a discussion of the statute of limitations, and its applicability to the plaintiffs' claims and the plaintiffs' discovery of the fraud. Thus, the jury instructions contain a discussion of the two fraud-related claims that are relevant to the adversary proceedings in the Bankruptcy Court: intentional misrepresentation and intentional concealment. (See Record at A738, A740.)

With respect to the intentional misrepresentation claim, the jury instructions[7] provided:

> Each plaintiff in this action also seeks to impose liability against [] defendants for intentional misrepresentation.

---

[7] The jury instructions use the singular form of plaintiff and defendant when listing the elements of each claim, and used the plural form otherwise.

-13-

. . . .

In order to establish fraud based on intentional false
misrepresentation, a plaintiff must establish:
        1. The defendant made a representation as to a past or
existing material fact;
        2. The representation was false;
        3. The defendant knew that the representation was false
when made, or that the representation was made recklessly
without knowing whether it was true or false or the
representation was made without any reasonable ground for
believing it to be true;
        4. The defendant made the representation with an intent
to defraud the plaintiff, that is, the defendant must have
made the representation for the purpose of inducing the
plaintiff to rely upon it and to act or to refrain from acting
in reliance thereon;
        5. The plaintiff was unaware of the falsity of the
representations he acted in reliance upon the truth of
representation and he was justified in relying upon the
representation;
        6. And, finally, as a result of his reliance upon the
truth of the representation, the plaintiff sustained some
damage.  The amount of damage is not before you at this time.

. . . .

A party claiming to have been defrauded by a false
representation must have relied upon the representations; that
is, the representation must have been a legal cause of his
conduct in entering into the transaction and without such
representation he would not have entered into such
transaction.

Reliance upon a representation may be shown by direct evidence
or may be inferred from the circumstances.

A party claiming to have been defrauded by a false
representation must not only have acted in reliance thereon
but must have been justified in such reliance, that is, the
situation must have been such as to make it reasonable for
him, in the light of the circumstances and his intelligence,
experience and knowledge, to accept the representation without
making an independent inquiry or investigation.

(Record at A738-40) (emphasis added.)

        With respect to the intentional concealment claim, the jury

instructions provided:

        Plaintiffs also contend that defendant[s], during the course

-14-

of their relationship with plaintiffs committed fraud by intentionally concealing material facts from plaintiff[s] by failing to disclose to plaintiffs that defendants were receiving fees and other compensation from the partnerships in which plaintiffs' money was invested.  Plaintiffs further contend that defendants were engaging in undisclosed conflicts of interest whereby defendants placed plaintiffs' money in partnerships from which defendants would be receiving fees and other income.

Plaintiffs contend they would not have employed defendants or invested in the partnerships had these facts not been concealed from them.

Defendants deny these contentions and contend their receipt of fees and other income from partnerships were fully and adequately disclosed to and authorized by plaintiffs. Defendants also contend that they did not intentionally conceal any material facts from [] plaintiffs as shown by their sending partnership documents to [] plaintiffs fully disclosing the payment of fees in those instances where fees were paid to them for the services they provided to the partnerships.

Where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud, otherwise known as intentional concealment, unless there is some relationship between the parties which gives rise to a duty to disclose such known facts.

A duty to disclose known material facts arises where the party having knowledge of the facts is in a fiduciary or a confidential relationship which imposes on him a duty of disclosure.

A duty to disclose known facts arises, in the absence of a fiduciary or a confidential relationship, when one party knows of material facts and also knows that such facts are neither known nor readily accessible to the other party.

(Record at A740-41.)

Each verdict form addresses each of the plaintiffs' state law claims in a separate section. Each section sets forth first the question of whether the claim is barred by the statute of limitations, followed by a separate question for each element the plaintiffs had to prove to establish that claim.  With respect to the intentional

-15-

misrepresentation claim, the jury answered in the negative, "Is [the plaintiff's] claim for intentional misrepresentation time barred by the statute of limitations?" (Record at A786, A818.)  The jury answered in the affirmative the following questions:

> Question No. 11: As to each defendant identified below, did the defendant intentionally make a false representation that [the plaintiff] would pay no more than 5% of his gross earnings from riding in return for [the] defendant[']s service[s], including investment services?
>
> . . . .
>
> Question No. 12: As to each defendant you answered "Yes" in response to Question No. 11, did the defendant know that the misrepresentation was false at the time it was made or, alternatively, did the defendant make the misrepresentation recklessly without reasonable grounds for believing it to be true?
>
> . . . .
>
> Question No. 13: As to each defendant you answered "Yes" in response to Question No. 12, did the defendant intend to induce [the plaintiff] to rely on the false representation?
>
> . . . .
>
> Question No. 14: As to each defendant [you] answered "Yes" to response to Question No. 13, was [the plaintiff] unaware of the false representation at the time it was made and did he justifiably rely on the truth of the representation in deciding to employ [the] defendant and to invest his money in partnerships?
>
> . . . .
>
> Question No. 15: As to each defendant you answered "Yes" in response to Question No. 14, did [the plaintiff] sustain damage as a legal result of an intentional misrepresentation made by the defendant?

(Record at A787-89, A819-21) (emphasis added.)

With respect to the intentional concealment claim, the jury answered in the negative, "Is [the plaintiff's] claim for intentional concealment time barred by the statute of limitations?" (Record at

-16-

A789-90, A822.)  The jury answered in the affirmative the following
questions:

> Question No. 17: As to each defendant identified below, did
> the defendant intentionally conceal material facts from [the
> plaintiff] that [the] defendant was receiving fees and
> compensation from the partnership [the plaintiff] was
> investing in or that [the] defendant was engaging in conflicts
> of interest with respect to those partnerships?
>
> . . . .
>
> Question No. 18: As to each defendant you answered "Yes" in
> responses to Question No. 17 was the defendant either in a
> fiduciary relationship with [the plaintiff] or did the
> defendant know that the concealed facts were neither known nor
> readily accessible to [the plaintiff]?
>
> . . . .
>
> Question No. 19: As to each defendant you answered "Yes" in
> response to Question No. 18, at the time of the concealment,
> did the defendant conceal these facts with the intent to
> defraud [the plaintiff]?
>
> . . . .
>
> Question No. 20: As to each defendant you answered "Yes" in
> response to Question No. 19, was [the plaintiff] unaware of
> the concealment and if he had known of the concealed facts
> would not have invested as he did regarding any of the
> partnership investments?

(Record at A790-92, A822-24.)

Consistent with the California District Court's jury
instructions, "[t]he elements of a cause of action for fraud in
California are: (a) misrepresentation (false representation,
concealment, or nondisclosure); (b) knowledge of falsity (or
'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)
justifiable reliance; and (e) resulting damage." Kearns v. Ford Motor
Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  See also, Stewart v.
Ragland, 934 F.2d 1033, 1043 (9th Cir. 1991)("Under California law, a

fraud action requires: 1) misrepresentation; 2) knowledge of the falsity of the representation; 3) intent to induce reliance; 4) justifiable reliance; and 5) damages."). It is well established that to prove that a debt is non-dischargeable under § 523(a)(2)(A), the "five elements, each of which the creditor must demonstrate by a preponderance of the evidence, are: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000). See also In re DePinna, 450 B.R. 337, 360 (Bankr. D. Conn. 2011)("To establish nondischargeability on the basis of 'false representation' it must be proved that: (1) the debtor made representations; (2) knowing them to be false; (3) with the intent and purpose of deceiving the creditor; (4) upon which representations the creditor actually and justifiably relied; and (5) which proximately caused the alleged loss or damage sustained by the creditor.").

After reviewing the jury instructions and verdict forms for the trial in the California District Court, the elements of a claim for fraud under California law, and the elements that must be proven to establish that a debt is non-dischargeable under § 523(a)(2)(A), the court concludes that the Bankruptcy Court properly held that the subject debts were non-dischargeable based on the collateral estoppel effect of the judgment entered in the California District Court

because the issue of whether the Appellants committed fraud had already been litigated and decided in the California action and that determination was entitled to preclusive effect in the bankruptcy proceeding.  The court notes that in analyzing whether collateral estoppel should be applied, the Bankruptcy Court relied solely on the intentional misrepresentation claim that was litigated and decided by the jury in California District Court; the Bankruptcy Court declined to consider the intentional concealment claim.

The issues in the two proceedings are identical.  The elements of a cause of action for fraud under California law are the same as the five elements a creditor must prove to establish that a debt is non-dischargeable under § 523(a)(2)(A).  Compare Kearns, 567 F.3d at 1126 (setting forth elements of fraud action under California law), and Stewart, 934 F.2d at 1043 (same), with In re Slyman, 234 F.3d at 1085 (setting forth elements that must be proven to establish non-dischargeability of debt under § 523(a)(2)(A)), and In re DePinna, 450 B.R. at 360 (same).  The record reflects that the issue was actually litigated and decided in the California action, that the parties here are the parties who litigated that action, and that the Appellants had a full and fair opportunity to litigate the issue.  Specifically, each verdict form required the jury to state a separate finding with respect to each element of intentional misrepresentation, including with respect to the issue of justifiable reliance; the jury responded in the affirmative with respect to each element, including justifiable reliance.  Finally, a finding with respect to each of the five elements was necessary to support a valid and final judgment on the

merits, which was entered.

The Appellants argue that because the Bankruptcy Court "made no reference to the Supreme Court's <u>Field v. Mans</u> requirement that [the] Appellees 'use [their] senses' and their 'opportunity to make a cursory examination or investigation'" (Appellant's Brief, Doc. No. 25, at 36) and the jury instructions in the California action eliminated "any notion of 'making an independent inquiry or investigation'" (<u>id.</u>), the Bankruptcy Court failed to recognize that the California jury never determined that the Appellees acted with justifiable reliance for purposes of § 523(a)(2)(A). However, the Appellants fail to put in context the language in <u>Field v. Mans</u>, which is a quotation from a comment to § 541 of the Restatement (Second) of Torts, pertaining to the need "to make a cursory examination or investigation." 516 U.S. at 71. While the Court quotes that comment for the proposition that a person "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation," <u>id.</u>, the Court next states, quoting <u>Prosser</u>, that "[i]t is only where, under the circumstances, the facts should be apparent to one of knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." <u>Id.</u>  The Court then cites to another treatise:

> [S]ee also  1 F. Harper & F. James, Law of Torts § 7.12, pp. 581-583 (1956) (rejecting reasonableness standard in misrepresentation cases in favor of justifiability and stating that "by the distinct tendency of modern cases, the plaintiff is entitled to rely upon representations of fact of such a character as to require some kind of investigation or

> examination on his part to discover their falsity, and a
> defendant who has been guilty of conscious misrepresentation
> can not offer as a defense the plaintiff's failure to make the
> investigation or examination to verify the same")(footnote
> omitted)[.]

Id. at 72.  Thus, as explained in Field v. Mans, the duty to inquire

arises only under certain circumstances.[8]  These principles are

reflected in the jury instructions, which state that justifiable

reliance is where "the situation must have been such as to make it

reasonable for [a plaintiff], in the light of the circumstances and

his intelligence, experience and knowledge, to accept the

representation without making an independent inquiry or

investigation."[9]  (Record at A740.)  Therefore, the jury instructions

accurately state the element of justifiable reliance as explained in

Field v. Mans because the instructions did not "eliminate any duty to

---

[8] Similarly, § 540 of the Restatement (Second) of Torts provides,
as a duty to investigate, that "[t]he recipient of a fraudulent
misrepresentation is justified in relying upon its truth, although he
might have ascertained the falsity of the representation had he made
an investigation."

[9] Both parties make arguments relating to whether there was
sufficient evidence for the jury in the California action to support
its verdict with respect to the element of justifiable reliance under
the standard in Field v. Mans.  (See Appellees' Brief, Doc. No. 43, at
5 ("[T]he Appellants have no basis to have this [c]ourt re-review
select parts of the record in the California action to determine, in
effect that judgments for intentional misrepresentation cannot stand
because 'justifiable reliance' was found against what they view as the
weight of the evidence."); Appellants' Reply Brief, Doc. No. 44, at 2
("The Appellants described the record in order to show . . . that
there was evidence before the jury that would have allowed it to reach
a different result had it been asked to apply the Field v. Mans
standard that bankruptcy law requires.").)  The issue relevant in the
instant appeal is whether the standard for justifiable reliance as set
forth in the jury instructions comports with Field v. Mans, not
whether the jury in the California action had evidence that could have
led it to reach a different result on the issue of justifiable
reliance, or had sufficient evidence to support the result it reached.

inquire" (Appellants' Brief, Doc. No. 25, at 36), as the Appellants contend, but rather instructed that an independent inquiry or investigation is not required if it was reasonable for the plaintiff to accept the false representation.

The Appellants also argue that the statute of limitations instructions together with the instructions for the intentional concealment claim misled the jury into applying the wrong law when it was considering the elements of common law fraud.[10]  This argument is untimely and inappropriate because any objections to the jury instructions the Appellants have were required to be raised with the California District Court and on appeal from the judgment entered by that court, not in an appeal of the Bankruptcy Court's decision to apply collateral estoppel to preclude issues already decided by the jury in the California action.

Moreover, there is nothing in the record to suggest that the jury in the California action was misled or applied the incorrect law to any specific claim.  The jury instructions and the verdict forms separately address each claim and each element of the claim. Specifically, the instructions concerning the intentional misrepresentation claim begin on A738 with the element of justifiable

_____

[10] The Appellees state that the Appellants "did not take issue with [the] Appellees' position that their intentional misrepresentation claim was not asserted as a claim for 'fiduciary fraud' under California law." (Appellees' Sur-Reply Brief, Doc. No. 49, at 3.)  The court understands the Appellants to be arguing that while the intentional misrepresentation claim is referred to as such in the California judgment, it is in substance a fiduciary fraud claim because of the jury instructions, i.e., if there is a fiduciary relationship, then a plaintiff is not under a duty to inquire. (See Appellants' Brief, Doc. No. 25, at 36; Appellants' Reply Brief, Doc. No. 44, at 5.)

reliance being explained on A740, the instructions concerning the intentional concealment claim begin on A740, and the instructions concerning the statute of limitations begin 11 pages later, on A751. In addition, Question No. 18 of each verdict form addresses the intentional concealment claim, which does not have justifiable reliance as an element, and comes after Question No. 14, which addresses justifiable reliance.  Nothing in the record suggests that the jury misapplied the standard for justifiable reliance when answering Question No. 14 because, as the Appellants argue, a later question instructs the jury "[to] assume that [the] Appellees [] make no examination (because they [are] 'under no duty of inquiry')." (Appellants' Reply Brief, Doc. No. 44, at 7.)  Considering the instructions as a whole, there is no reasonable ground to depart from the general presumption that the jury properly followed the instructions it was provided for each individual claim.  See, e.g., Honda Motor Co., Ltd. v. Oberg, 512 U.S. 415, 443-44 (1994)("[T]his Court has often acknowledged, and generally respected, the presumption that juries follow the instructions they are given.").

**V.  CONCLUSION**

For the reasons set forth above, the decision of the Bankruptcy Court is hereby AFFIRMED.

The Clerk shall close this case.

It is so ordered.

Dated this 26th day of March 2014 at Hartford, Connecticut.

                        /s/
                        _____
                        Alvin W. Thompson
                        United States District Judge

-23-